# NO. 12-08-00436-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS FOR* | § | *APPEAL FROM THE* |
| *THE BEST INTEREST AND* | § | *COUNTY COURT AT LAW* |
| *PROTECTION OF C.G.* | § | *CHEROKEE COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

C.G. appeals from an order of commitment for temporary inpatient mental health services. After a hearing without a jury, the trial court ordered C.G. committed to Rusk State Hospital for a period not to exceed ninety days. In a single issue, C.G. asserts the evidence is legally and factually insufficient to support the order. We affirm.

### BACKGROUND

On September 24, 2008, an application for court ordered temporary mental health services was filed requesting the court commit C.G. to Rusk State Hospital for a period not to exceed ninety days. The application was supported by a certificate of medical examination for mental illness, prepared by a physician, Dr. Jon Guidry, who had examined C.G. on September 23. Dr. Guidry diagnosed C.G. as suffering from Bipolar Disorder mixed with psychotic features. He found that C.G. is mentally ill and likely to cause serious harm to herself. He also found that C.G. is suffering severe and abnormal mental, emotional, or physical distress, is experiencing substantial mental or physical deterioration of her ability to function independently, which is exhibited by her inability to provide for her basic needs, and is unable to make a rational and informed decision as to whether or not to submit to treatment.

Dr. Guidry reached these conclusions because, on September 23, C.G. provided tangential, circumstantial responses and had been sent to Rusk State Hospital from another

county under an order of protective custody. Further, Dr. Guidry relied on C.G.'s explanation that an ambulance was sent to her home after she returned home from the emergency room where she had gone for her medications, as well as her denial that she is suicidal. For those same reasons, and because C.G. said her medications were not right, she was depressed, and she was not stable, Dr. Guidry also determined that, as demonstrated by her behavior and evidence of severe emotional distress and deterioration in her mental condition, C.G. presents a substantial risk of serious harm to herself or others if not immediately restrained.

On September 24, 2008, C.G. was examined by Dr. Larry Hawkins who then also prepared a certificate of medical examination for mental illness. Dr. Hawkins diagnosed C.G. with Bipolar Disorder and a nonspecified personality disorder. He also indicated that C.G. is mentally ill and likely to cause serious harm to herself. The doctor's basis for his opinion is that C.G. had reportedly threatened suicide, which she denied, she was depressed, anxious, and overwhelmed with the circumstances of the previous two weeks, she exhibited "circumstantial speech" and poor train of thought, and was evasive.

Dr. Hawkins testified at the hearing, explaining that he diagnosed C.G. with Bipolar Disorder and personality disorder, N.O.S. He testified that C.G. is likely to cause serious harm to herself. He explained that, at times, she gets confused and is unable to make good decisions. And while that has improved during hospitalization, it continues to be very difficult to get her to cooperate with any kind of reasonable treatment. He explained that he concluded she is likely to cause serious harm to herself based on a pattern of behavior. C.G. is reported to have threatened suicide before coming to the hospital and, the week before the hearing, she told a nurse she was suicidal. Dr. Hawkins testified that C.G. has a difficult time making decisions and talking about her issues in a coherent fashion and that she has predetermined what she will accept as treatment. She will agree to take some medications but refuses some others. In the month that she had been hospitalized, nothing changed except that she is less depressed. He specifically stated that C.G. continues to maintain that she cannot manage herself outside the hospital without suicidal indications. Dr. Hawkins explained that her personality disorder keeps her wanting to stay in a protected environment while part of her does not like medical personnel telling her what is good for her. Consequently, she keeps fighting over treatment. The doctor testified that her prognosis is, at best, fair. His diagnosis is based on his examination of C.G., a review of her medical

history, and reasonable medical probabilities. He explained that C.G. could probably be released from the hospital if she would agree to a mood stabilizer and be on it for a couple of weeks. However, he testified that Rusk State Hospital is the least restrictive available medical treatment option at this time.

On cross examination, Dr. Hawkins testified that C.G. does not agree with anyone at the hospital and will not talk about her medications in a rational fashion. He explained that he is going to ask that she be transferred to another unit and for a second opinion because she has not stabilized and continues to complain of the treatment she is getting. She agreed to take an antidepressant, which is helping, but, due to inaccurate information she received from other doctors in the past, she refuses to take mood stabilizers that would help with her suicidal tendencies.

On redirect examination, Dr. Hawkins explained that, less than a week before she was admitted at Rusk, C.G. was a voluntary patient at a private psychiatric hospital where they were willing to stabilize her with the medications she agreed to take.

C.G. testified in her own behalf. She denied telling a nurse that she was suicidal. She stated that she had been to two other hospitals and Dr. Hawkins had access to the files from those hospitals. She denied feeling suicidal, explaining that the last time she felt suicidal was two or three weeks ago. She explained that she felt depressed due to her medical and mental disabilities. She testified that, if she were released from the hospital, she would go to her mother's house. When asked her source of income, she responded that she has "SSDI."

The trial court entered an order for temporary inpatient mental health services after determining that the evidence supports the allegations that C.G. is mentally ill and that she is likely to cause serious harm to herself. The court ordered C.G. committed to Rusk State Hospital for a period not to exceed ninety days.

## SUFFICIENCY OF THE EVIDENCE

In her sole issue, C.G. asserts the evidence is neither legally nor factually sufficient to support the order of commitment. She argues that the evidence does not show an overt act or continuing pattern of behavior tending to confirm that she is likely to cause serious harm to herself. Thus, she argues, the State failed to meet its evidentiary burden under the statute.

3

**Standard of Review**

In a legal sufficiency review where the burden of proof is clear and convincing evidence, the reviewing court must consider all of the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). The reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* A court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.*

In addressing a factual sufficiency of the evidence challenge, we must consider all the evidence in the record, both that in support of and contrary to the trial court's findings. *In re C.H.*, 89 S.W.3d 17, 27-29 (Tex. 2002). This court must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.* at 25. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *Id.* We must consider whether disputed evidence is such that a reasonable trier of fact could not have reconciled that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. Appellate courts retain deference for the constitutional roles of the factfinder. *In re C.H.*, 89 S.W.3d at 26. The trier of fact is the exclusive judge of the credibility of the witnesses and the weight to be given their testimony. *See id.* at 27; *In re J.J.O.*, 131 S.W.3d 618, 632 (Tex. App.–Fort Worth 2004, no pet.).

**Applicable Law**

The trial judge may order a proposed patient to receive court ordered temporary inpatient mental health services if the judge or jury finds, from clear and convincing evidence, that the proposed patient is mentally ill and, as a result of the mental illness she is likely to cause serious harm to herself, is likely to cause serious harm to others, or is (i) suffering severe and abnormal mental, emotional, or physical distress, (ii) experiencing substantial mental or physical deterioration of her ability to function independently, which is exhibited by her inability, except for reasons of indigence, to provide for her basic needs, including food, clothing, health, or safety, and (iii) unable to make a rational and informed decision as to whether or not to submit to treatment. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (Vernon 2003). To be clear and convincing under the statute, the evidence must include expert testimony and, unless waived,

4

evidence of a recent overt act or a continuing pattern of behavior that tends to confirm either the likelihood of serious harm to the proposed patient or others, or the proposed patient's distress and the deterioration of her ability to function. TEX. HEALTH & SAFETY CODE ANN. § 574.034(d) (Vernon 2003).

**Discussion**

The State provided expert testimony explaining that C.G. is mentally ill. Dr. Hawkins described a pattern of behavior involving threats to commit suicide and a continuing concern for suicidal indications. Further, while C.G. is less depressed, she is confused, unable to make good decisions, and is uncooperative with regard to her treatment, refusing to take mood stabilizers that would help reduce her suicidal tendencies. Thus, the record contains expert testimony of a recent continuing pattern of behavior that tends to confirm the likelihood that C.G. will cause serious harm to herself. The trial court could have disbelieved C.G.'s testimony to the contrary. *See In re J.F.C.*, 96 S.W.3d at 266.

Considering all the evidence in the light most favorable to the findings, we conclude a reasonable trier of fact could have formed a firm belief or conviction in the truth of the finding that C.G. is likely to cause serious harm to herself. *Id.* The evidence presented satisfies the statutory requirement for clear and convincing evidence in support of the order for temporary inpatient mental health services. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(d). The evidence is legally sufficient to support the trial court's order. *See In re J.F.C.*, 96 S.W.3d at 266.

In addressing C.G.'s factual sufficiency complaint, we consider the evidence the factfinder could reasonably have found to be clear and convincing. *In re C.H.*, 89 S.W.3d at 25. C.G. denied currently feeling suicidal or that she told a nurse at Rusk State Hospital that she was suicidal. The trial court was entitled to disbelieve C.G.'s testimony and disregard evidence contrary to the State's position. *See id.* at 27. In explaining that she had not felt suicidal in the last two or three weeks, she implied that she had, as recently as two weeks before the hearing, been suicidal. In light of the entire record, the evidence that the trial court could not have credited in favor of its findings is not so significant that it could not reasonably form a firm belief or conviction that C.G. is likely to cause serious harm to herself. *See id.* Thus, the evidence is factually sufficient to support the trial court's finding. Because we hold the evidence

5

is both legally and factually sufficient to support the trial court's order, we overrule C.G.'s sole issue.

### DISPOSITION

We *affirm* the trial court's order of commitment for temporary inpatient mental health services.

  BRIAN HOYLE  
Justice

Opinion delivered September 23, 2009.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

6